# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RODNEY BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-12-1356-HE |
| ) | |
| INFUSED SOLUTIONS, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Rodney Brooks filed this action against his former employer, Infused Solutions ("Infused"), under Title VII of the Civil Rights Act of 1964. He claims he was retaliated against and terminated for complaining about racial discrimination in the workplace. Infused has filed a motion for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)). Having considered the submissions of the parties in light of this standard, the court concludes defendant's motion should be granted.

## Background

In September 2011, plaintiff began to work for defendant, a federal contract company

located at the Federal Aviation Administration ("FAA") Mike Monroney Aeronautical Center in Oklahoma City. Infused employees work with, and do the same work as, FAA employees, but are not federal employees. On April 20, 2012, plaintiff complained to his supervisor, William Schmitt, that an FAA employee, Charity Hadley, had used a racial epithet. Infused followed the required procedure for reporting a federal employee's alleged discriminatory behavior to the FAA Accountability Board in Washington, D.C.[1] Schmitt sent plaintiff's complaint to Yvonne Morgan, Infused's Program Manager, who then forwarded it to the appropriate federal employees. Other than Schmitt and Morgan, no other Infused employees were aware of Brooks's complaint.

The Accountability Board decides if an investigation is warranted. If one is conducted the results are not divulged to Infused or the complainant. They are only told that the investigation has been completed and the case has been closed. The notice Infused and Brooks received (Feedback to Reporting Party) stated that the information reported was "taken seriously and ... a thorough investigation was conducted. Although you cannot be told what action Management took, please be assured that the appropriate action was taken." Doc. #16-2, Exhibit B.[2] Both plaintiff and Morgan signed the final report.

After the incident Brooks asked to move his desk from his present work area to avoid

---

[1] *Plaintiff responded to a number of defendant's fact statements by stating he lacked sufficient information to admit or deny them. That response is insufficient to challenge a fact statement, resulting in it being deemed admitted.*

[2] *Page references for briefs and exhibits are to the CM/ECF document and page number and sometimes the document or deposition page number. For example, deposition page no. 64 of Exhibit 2 to plaintiff's response brief is referred to as Doc. #23-2, p. 25, depo. p. 64.*

contact with the offending federal employee. Infused complied with that request. On May 17, 2012, plaintiff approached Ron Lane, Deputy Program Manager for Infused, and told him that he felt he was moved in retaliation for the "issue that had been on-going in his area." Doc. #16, p. 7 (Defendant's Fact #9).³ Lane denied that the move was retaliatory and stated that he subsequently explained to plaintiff that, because they were federal contractors and not federal employees, it was easier for them to move "than federal employees who are subject to union requirements." Doc. #16-3, p. 2.

Plaintiff then asked to be moved to another department. Infused moved him to the Travel Department, which was a lateral move with Brooks's job title and pay rate remaining the same. While plaintiff admitted that he asked to change departments and defendant complied with his request (Defendant's Fact #9), he asserts in his Additional Facts that he and his supervisor, Lane, had agreed, and he was told, that he would be transferred to the "Post Audits" section within the same department where he was currently working. Doc. #23, p. 6. Plaintiff admitted, though, in his deposition that, after he realized it was a different position than he and Lane had agreed to, he "accepted that position." Doc. #23-2, p. 6, depo. p. 18.

At some point after his June 11, 2012, transfer into the Travel Section, plaintiff learned that Infused employees had to fill out their time sheets on a daily basis and then submit them on the 15th and last day of each month. He testified that when he had worked

---

³Plaintiff admitted Defendant's Fact #9.

3

under Schmidt, before his transfer, he just had to have his time in by Friday each week. Several weeks after he had been transferred, plaintiff also was informed about what he claimed was a new requirement that he had not had in his old position – Travel Department employees had to put a sign on their desks when they were at lunch or on break. Monique Daniels, plaintiff's supervisor in the Travel Department, explained to plaintiff that the signs were intended to establish "good customer relations with the FAA so that a federal employee who needs [an Infused employee's] assistance would know where he was." Doc. #16, p. 8; #16-4, ¶6.

Daniels asked Brooks several times by instant messaging or email to comply with the time reporting and sign requirements. Brooks felt he was being singled out when asked to display a sign and told Daniels that he thought that both the sign requirement and her repeated requests that he input his time on his computer were "retaliation." When plaintiff then attempted to explain why he had been moved to her team, Daniels "cut him off and [told] him that it wasn't any of her business because what happened in the other area wasn't on [her] watch." Doc. #16, p. 9. Plaintiff testified that he was "the only one that she did that to. She didn't have to do that to anyone else. And I don't know if they were doing what it was that she required. I know that I'm the one that she was on every single day since I started there." Doc. #23-2, p. 9, depo. p. 21.[4]

---

[4]*Plaintiff does not argue that his complaint about retaliation to Daniels was "protected conduct," and could not successfully make that argument as there is no evidence she knew about his April 20 complaint regarding Hadley. The same lack of knowledge prevents Daniels' treatment of Brooks from being considered retaliatory.*

4

Brooks claims that, unlike other employees, he was subjected to daily harassment by Daniels regarding time sheet compliance. He testified that he considered having to send Daniels daily emails that he had arrived at work and was leaving and letting her know when he was on break to be harassment. Doc. #23-2, p. 21, depo. p. 60. He asserts he was assigned extra duties "not assigned to other similarly situated Travel Department employees." Doc. #23, p. 3.[5]

Daniels was informed on June 19, 2012, that plaintiff was playing a game on his computer. He was given a notice of the finding and told to stop playing the game. The following Friday, June 22, 2012, defendant claims Brooks was again observed playing a game. The FAA internet policy does not allow government property to be used for playing games except when the employee is on a break or at lunch. Brooks was given a warning regarding his asserted improper use of government property. He refused to sign the warning, asserting that he had never used the internet improperly at work.

On July 13, 2012, after Daniels had sent Brooks an instant message asking him to input his time from the proceeding day to the time system, which she had copied to Morgan and Lane, Brooks requested a meeting with Morgan, Lane and Daniels. He contends he requested it to discuss "what he believed was retaliatory treatment [that] he was receiving from Monique Daniels." Doc. #23, p. 3. Plaintiff testified he asked for the meeting to preclude Daniels "getting on me about letting her know when I'm going on break, when I'm

---

[5]*Brooks has not asserted a claim of disparate treatment.*

coming back from break, when I'm going on lunch, when I'm coming back from lunch, so on and so forth." Doc. #23-2, p. 14, depo. p. 47.

Brooks and Daniels immediately went to Morgan's office, where Brooks raised the issue of having to send Daniels emails when he arrived at work and left for the day and having to post signs when he was on a break or at lunch. Plaintiff took the position that Daniels, by requiring him to follow the procedures and reminding him of them, was harassing him. Morgan told plaintiff that Daniels was doing her job, that he was being treated the same as the other employees, and that if he did not want to follow the rules he could find other employment. Plaintiff's prior write-up also came up with plaintiff challenging its accuracy.[6]

The parties disagree as to how the meeting ended and whether he quit or was fired.[7] Defendant asserts that sometime during the meeting plaintiff stated "Did you offer me the door. Don't you offer me the door again" and then said before he left, "I will finish out the day." Doc. #16-4, p. 3. Defendant asserts that it was decided, after Brooks had left the meeting, that it was "in the best interest of the work environment that [plaintiff] should be escorted out immediately," *id.,* rather than have him leave at the end of the work day.

---

[6]*Plaintiff asserts that Daniels stated that she was the one who had seen him using the internet in violation of work rules and that this was untrue, citing an email she had sent him. Doc. #23-6. In that email Daniels does state "You have been spotted playing your game on your computer, Jeff, the federal manager, just asked me about it." Id. However plaintiff was allegedly spotted twice on his computer.*

[7]*Plaintiff, in response to defendant's Fact Statement #20, admits there was a meeting, and states that the "Rest and remainder is denied." Doc. #23, p. 3. He then proceeds to describe the meeting. To the extent that plaintiff's version of the meeting conflicts with defendant's, that will be indicated. Otherwise, plaintiff's general denial is insufficient to refute defendant's summary of the July 13, 2012, meeting.*

Defendant asserts that plaintiff was not terminated, but quit because he did not want to follow policy.

Plaintiff asserts that Morgan[8] said "You're either going to do the shit that we tell you to do or there's the fucking door" and Lane made a similar statement. Doc. #23-2, p. 11, depo. p. 23. He claims he did not say he would "finish out the day," and did not resign from his job. He states he was terminated by an Infused representative and testified that five minutes after he had left the meeting "they came over with security," and said: "'We have decided to fire you. Hand us your badge.'" Doc. #23-2, p. 11, depo. p. 23. Plaintiff contends he handed over his badge and was escorted out.

Plaintiff received only two discipline notices during his employment – on June 19, 2012, and on his last day – July 13, 2012.

## Analysis

"Title VII makes it unlawful to retaliate against an employee because [he] has 'opposed' any practice made unlawful by Title VII, or because [he] has 'participated ... in an investigation, proceeding or hearing under this subchapter.'" Annett v. Univ. of Kansas, 371 F.3d 1233, 1237 (10th Cir. 2004) (quoting 42 U.S.C. § 2000-3(a)). As plaintiff has not offered direct evidence of retaliation, his claim is analyzed under the McDonnell Douglas[9] burden-shifting analysis. EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1191

---

[8]*Morgan was the only Infused employee who was authorized to terminate employees.*

[9]*McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).*

7

(10th Cir. 2000). Under this framework, plaintiff bears the initial burden of establishing a prima facie case of retaliation. *Id.* Once he makes out a prima facie case, he "raises a rebuttable presumption that the defendant unlawfully [retaliated] against [him]." *Id.* The burden then shifts to the defendant to articulate a facially nonretaliatory reason for the adverse employment action suffered by the plaintiff. *Id.* At this stage of the proceeding the defendant's burden is one of production, not persuasion. *Id.* If the defendant sustains its burden, plaintiff "bears the ultimate burden of demonstrating that [defendant's] proffered reason is pretextual." Vaughn v. Epworth Villa, 537 F.3d 1147, 1150 (10th Cir. 2008) (internal quotations omitted). Despite the shifting burden of production "under the McDonnell Douglas framework, the ultimate burden of proving intentional [retaliation] is borne by the plaintiff." Horizon/CMS, 220 F.3d at 1191-92.

To establish a prima facie case of retaliation, a plaintiff must offer evidence demonstrating (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse and (3) that a causal connection existed between the protected activity and the materially adverse action. Argo v. Blue Cross & Blue Shield of Kansas, Inc., 452 F.3d 1193, 1202 (10th Cir. 2006)

Defendant does not dispute that plaintiff was engaged in protected conduct when he reported Hadley's remark, but claims he cannot show that he was subjected to a materially adverse employment action or demonstrate a causal connection between the protected activity and an adverse employment action. Plaintiff responds, arguing that his termination was an adverse employment action and that the temporal proximity between his protected

8

conduct and his discharge supports an inference of retaliatory motive. *See* Annett v. Univ. of Kansas, 371 F.3d 1233, 1239-40 (10th Cir. 2004) (protected conduct closely followed by adverse action may establish the third element of a prima facie case of retaliation). Construing the evidence in the light most favorable to plaintiff, the court agrees with plaintiff that he has offered evidence of a materially adverse employment action – termination – but concludes he has failed to "proffer[] 'evidence of circumstances that justify an inference of retaliatory motive.'" *Id.* at 1239-40.

Plaintiff relies on the temporal proximity between his asserted protected activity and his July 13 termination to demonstrate the required causal connection. He claims he engaged in three separate acts of protected conduct: his initial complaint about Hadley's comment on April 20, 2012, his complaint to Lane on May 17, 2012, that he thought the desk move was retaliatory and "[a]rguably the complaint on July 13, 2012," "about Ms. Daniels' conduct toward plaintiff," which he contends "was further protected activity because it concerned allegations stemming from the initial opposition activity."[10] Doc. #23, pp. 9,11.

The court concludes the time lapse between plaintiff's initial complaint about Hadley's remark and his termination is too great to demonstrate causation. In Conroy v. Vilsack, 707 F.3d 1163 (10th Cir. 2013) the Tenth Circuit acknowledged that its cases "have never established a precise temporal line for purposes of determining whether the requisite

---

[10]*Plaintiff asserts in his brief that "[l]ater he complained that his new job assignment, as well as the manner he was treated by the new supervisor, constituted retaliation for his complaint about Ms. Hadley," Doc. #23, p. 11. However, plaintiff has not cited to any evidence demonstrating that he informed Infused after May 17th (if then), of his belief that he was being mistreated in retaliation for his complaint about Hadley's use of a racial epithet.*

9

proximity is present to establish—at the prima facie stage—the causation element." *Id.* at 1181. The court stated that, while "[i]t appears clear that, if the adverse action[11] occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference ... it is equally patent that if the adverse action occurs three months out and beyond from the protected activity, then the action's timing alone will not be sufficient to establish the causation element." *Id., accord* Meiners v. Univ. of Kansas, 359 F.3d 1222, 1231 (10th Cir. 2004) ("A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient."). The problem, the court noted in Conroy, was that "where along the temporal line beyond one and one-half months but short of three months, the adverse action's timing ceases to be sufficient, standing alone, to establish the requisite causal inference is less than pellucid." Conroy, 717 F.3d at 1181.

Meiners does, though, provide guidance. One of the issues in that case was whether the plaintiff had made a prima facie showing of retaliatory causation. The Tenth Circuit stated that when the awareness of the protected conduct and the adverse act occurred "a minimum of about two months and one week [67 days] and a maximum of just under three

---

[11]*As noted by the Tenth Circuit in* Argo, *the Supreme Court has held that "to prevail on a Title VII retaliation claim, a plaintiff need only show 'that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"* Argo, 452 F.3d at 1202 n.2 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 54 (2006)). *The Court rejected the standard previously used by the Tenth Circuit of an "adverse employment action." Id. References in this order to "adverse action" are to the term as used by the* Burlington *court.*

10

months" apart, the events were "under our precedents, probably too far apart ... to establish causation by temporal proximity alone." Meiners, 359 F3.d at 1231. The court concludes that the gap here between plaintiff's complaint about Hadley and his discharge – a week shy of three months – is too long, standing alone, to support a finding of the required causal link.

Plaintiff asserts that he next engaged in protected conduct when he complained to Lane about his desk being moved, telling Lane that he felt it was in "retaliation for the issue that had been on-going in his area." Doc.#16, p. 7, defendant's admitted Fact #10. *See* Hertz v. Luzenac America, Inc., 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors.") While the record reflects that Lane was aware that plaintiff was having some problems with Hadley, plaintiff admitted that no Infused employees, other than Schmitt and Morgan, had knowledge of his initial complaint. *Id*. at p. 6, defendant's admitted Fact #7.[12] He offers no evidence that Lane or any of the other Infused employees were aware that he had complained to Schmitt about Hadley and that the matter had been reported to the FAA Accountability Board. It is fundamental that, to show retaliation, a plaintiff must offer evidence from which a reasonable factfinder could conclude that the person who took the adverse action "had knowledge of his protected activity." Hinds v. Spring/United Mgmt. Co., 523 F.3d 1187, 1203 (10th Cir.2008). Further, even if there was evidence to suggest Lane did know about plaintiff's complaint, plaintiff admits that he instigated the change in location of his desk and

---

[12]*See supra note 1*.

that he asked to have his desk moved away from his then-current work area. Doc.#16, p.7 (defendant's admitted Fact #9). While a plaintiff does not have to establish that his employer actually retaliated against him, he does have to show that "when he engaged in protected opposition he had a reasonable good-faith belief that the opposed behavior was [retaliatory]." Hertz, 370 F.3d at 1016). Plaintiff has not submitted evidence creating a fact question as to whether he had a "good faith belief" that defendant retaliated against him by moving his desk, when it was moved at his request.[13] Moreover, plaintiff also has not demonstrated that a reasonable worker would consider a desk move to be a "materially adverse action" sufficient to support a complaint of retaliation. Plaintiff has failed to offer evidence demonstrating that his complaint of retaliation to Lane constituted "protected conduct" that can linked with plaintiff's termination to create an inference of retaliatory motive.

The last act of protected conduct plaintiff relies on to establish his retaliatory discharge claim is "[a]rguably the complaint on July 13, 2012." Plaintiff contends it could be "further protected activity because it concerned allegations stemming from the initial opposition activity." Doc. #23, p. 11. Plaintiff's argument in this regard is unclear and not supported by any authority. There is no evidence that plaintiff advised anyone during the July 13, 2012 meeting that he felt he was being retaliated against for any reason, much less because he had complained months earlier about a racial slur made by a federal employee.

---

[13]*Plaintiff's position might have been plausible if he had simply told Lane he could no longer work with Hadley or asked that she be moved. If his desk rather than hers was then moved, he might have had a basis for claiming the decision to move his desk, rather than hers, was retaliatory.*

Plaintiff relies solely on temporal proximity to establish the causation element of his prima facie case. As the court has concluded that the only protected conduct plaintiff engaged in – his complaint about Hadley's discriminatory comment – was too distant to create an inference that plaintiff's termination was retaliatory, plaintiff has failed to establish his prima facie case. *See generally* Meiners, 359 F.3d at 1229-32. Defendant is therefore entitled to summary judgment on plaintiff's retaliatory discharge claim.[14]

Accordingly, defendant's motion for summary judgment [Doc. #16] is **GRANTED**. Judgment will be entered in defendant's favor on plaintiff's retaliatory discharge claim.

**IT IS SO ORDERED**.

Dated this 21st day of October, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[14]*To the extent that plaintiff is alleging retaliation distinct from his termination, as discussed earlier, the desk move cannot be considered a materially adverse action and plaintiff has not shown that his lateral transfer to the Travel Department, even though not the move he had agreed to, could itself be considered materially adverse. Assuming plaintiff's alleged treatment by his new supervisor after the transfer was materially adverse conduct, plaintiff has offered no evidence that Daniels was aware of Plaintiff's initial complaint of discrimination.*